*In re* MARRIAGE OF CYNTHIA M. JACKS, Petitioner-Appellee, and WILLIAM T. JACKS, Respondent-Appellant.

Second District   No. 2—89—0875

Opinion filed April 6, 1990.—Rehearing denied May 11, 1990.

James J. Pacione and Steven N. Peskind, both of Peskind & Peskind, Ltd., of Aurora, for appellant.

Larry M. Amoni, of Aurora, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Respondent, William Jacks, appeals from the trial court's order of July 26, 1989, denying his post-trial motion. William argues that the court erred in classifying the home in which he and petitioner, Cynthia Jacks, lived as marital property. William also claims that the court's judgment regarding the distribution of property, the award of maintenance and the award of attorney fees was against the manifest weight of the evidence. We affirm.

The first issue is whether the court erred in determining that the property located at 209 South LeGrande was marital property.

Cynthia and William began dating in January 1984 and became engaged in March 1984. William testified that he first saw the house two to three years prior to 1984. The first time he entered the house was in April 1984 with Cynthia and a realtor. William testified that his intent in purchasing the home was for an investment, and he looked at two other comparable homes to see if this house was a good deal. Cynthia testified that William never mentioned his intention to purchase the home as an investment, and they looked at other four-bedroom homes because she had four children. Cynthia's name appeared on the offer sheet. The home was purchased for $84,000 on May 25, 1984. Title to the home was in William's name exclusively. William testified that this was because Cynthia did not want to get in on the investment. Cynthia testified that her name was not on the title because the home was purchased with a Veterans Administration loan. The home was purchased with no money down and $1,000 earnest money paid by William. The two were married approximately one hour after the closing on the house.

William contends that, since the property was acquired prior to the marriage, it is not marital property. Cynthia contends that the property was purchased in contemplation of marriage and, therefore, it is marital property.

■ Section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) provides:

"For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':

\* \* \*

(6) property acquired before the marriage;

(7) the increase in value of property acquired by a method listed in paragraphs (1) through (6) of this subsection, irrespective of whether the increase results from a contribution of marital property, non-marital property, the personal effort of a spouse, or otherwise, subject to the right of reimbursement provided in subsection (c) of this Section \* \* \*." (Ill. Rev. Stat. 1987, ch. 40, par. 503(a).)

William asserts that the plain language of this statute separates marital and nonmarital property on the basis of when the property was acquired.

Cynthia cites several appellate court cases from other districts which do not interpret the above statute so rigidly. (See *In re Mar-*

*riage of Stallings* (1979), 75 Ill. App. 3d 96; *In re Marriage of Malters* (1985), 133 Ill. App. 3d 168; *In re Marriage of Ohrt* (1987), 154 Ill. App. 3d 738.) These cases looked at the intent of the parties and determined that property purchased prior to marriage but in contemplation of marriage is marital property. This court has not had an opportunity directly to address this issue in the past, but for the reasons provided below, we agree that property purchased prior to marriage but in contemplation of marriage should be classified as marital property.

In *Stallings*, the parties purchased a home less than two months before their marriage. The wife paid a $5,000 down payment from her funds. The parties took title as tenants in common, and the mortgage payments were made from marital assets. The Appellate Court for the Fifth District affirmed a finding that the home was a marital asset. (*Stallings*, 75 Ill. App. 3d at 99.) The court found that the property was purchased in contemplation of marriage and with the intent that it would be the family home. The court also noted that all the equity in the home was acquired with marital funds. (*Stallings*, 75 Ill. App. 3d at 99.) The court rejected the notion that section 503 of the Act arbitrarily categorizes all property acquired prior to marriage as nonmarital property. *Stallings*, 75 Ill. App. 3d at 99.

In *Malters*, the parties accompanied a real estate agent to look at a home prior to marriage. Both parties signed the offer sheet to purchase the home. The husband borrowed $5,000 from the wife's father to make the down payment. Title to the house was placed in trust with the husband named as the sole beneficiary. The Appellate Court for the First District affirmed a finding that the home was a marital asset. (*Malters*, 133 Ill. App. 3d at 179.) As in *Stallings*, the court found that the legislature did not intend to preclude a finding that property purchased prior to marriage could never be a marital asset. *Malters*, 133 Ill. App. 3d at 179.

In *Ohrt*, the property was purchased approximately two months prior to the marriage. The funds for the down payment were borrowed. Only the husband's name appeared on the title, note and mortgage. The Appellate Court for the Third District, citing *Stallings* and *Malters*, affirmed a finding that the home was marital property. The court noted that the property was purchased with the idea that it would be the marital residence and found "it of no consequence that the property was purchased by respondent prior to the marriage or that title was solely in his name." *Ohrt*, 154 Ill. App. 3d at 742.

William contends that the Illinois legislature has set up a dual system of property classification in which property is either a nonmarital

or a marital asset. This system is consistent with the partnership theory of marriage which is the foundation of the Act. William asserts that this system distinguishes marital and nonmarital property on the basis of when the property was purchased. Additionally, William contends that recognition of this doctrine would create a third category of property contrary to the intent of the legislature. William concludes that to recognize the "in contemplation of marriage" doctrine would be to replace the legislative intent with an "arbitrary standard which analyzes the parties['] purpose in purchasing the property."

■ While we agree with much of what William sets forth, we do not agree that classifying property acquired in contemplation of marriage as marital property is an affront to the legislative intent. Recognition of this doctrine does not create a "third category" of property as William suggests, but simply takes into account the party's intent in purchasing the asset when classifying the property as either marital or nonmarital. Also, we do not consider intent to be an "arbitrary standard," for if it were, hundreds of years of contract law, *inter alia*, would have to be discarded. As William has stated, the Act is based upon a partnership theory of marriage. We are aware of no authority which states that the partners' intent is of no consequence when reviewing a partnership situation.

■ The legislature did amend section 503 of the Act in 1983. (Pub. Act 83—129, eff. August 19, 1983.) Of particular relevance are the changes made to section 503(a)(6) and the addition of section 503(a)(7). These changes were made to address a situation in which property that was originally nonmarital was transmuted into marital property due to some action of the spouse. (See *In re Marriage of Smith* (1981), 86 Ill. 2d 518.) The legislative amendments to section 503 now mandate that the property originally nonmarital in nature will remain nonmarital with the spouse having a right of reimbursement. Ill. Rev. Stat. 1987, ch. 40, par. 503(a)(7).

This legislative amendment occurred four years after the decision in *Stallings*, and while the legislature chose to alter the statute to address the situation presented in *Smith*, it did not choose to amend the statute to reflect its opinion of the *Stallings* decision. The amendment made to section 503(a) in response to *Smith* does not address the situation presented in *Stallings, Malters, Ohrt* and the case at bar. In *Smith*, property that was originally nonmarital is transmuted into marital property. In the other situations, the property is marital from the start. It is never transmuted from one classification to another. The legislature could have easily added language to section 503(a)(6) to establish a mandatory and conclusive presumption that property ac-

quired prior to marriage is nonmarital. The legislature did not see fit to make such an amendment in 1983, nor has it done so in response to *Malters* and *Ohrt*.

■ We agree with the above-cited cases that property acquired prior to marriage, but in contemplation of marriage, should be classified as marital property. This determination is necessarily founded upon the intention of the parties at the time the property is purchased. We do, however, disagree with the statement made by the court in *Ohrt* that timing and manner of holding title is "of no consequence." We believe the correct phrase would have been, "is not determinative." The totality of the circumstances should be examined to discover the parties' intent. The facts mentioned in the above case, *i.e.*, source of funds to acquire the property, who signed the offer sheet, how long prior to marriage was the property purchased, and how title was held, are all factors to be considered in ascertaining the intent of the parties.

■ Since we hold that property obtained in contemplation of marriage is marital property, we now must determine if the home in the case at bar was property purchased in contemplation of marriage. The distribution of marital property is a decision within the sound discretion of the trial court and that decision will not be disturbed absent an abuse of discretion. (*Ohrt*, 154 Ill. App. 3d at 738.) This court will not find an abuse of discretion unless no reasonable person would agree with the trial court's decision. *In re Marriage of Hanson* (1988), 170 Ill. App. 3d 298, 303.

■ In the case at bar, both parties accompanied a realtor to see the home. Both parties' names appeared on the offer sheet. William informed the real estate agent that he needed a big home because the woman he was marrying had four children. The home was purchased with no money down, and all mortgage payments were made with marital funds. The home was purchased approximately one hour prior to the marriage ceremony. While William testified that the property was purchased as a short-term investment, his testimony was contradicted by Cynthia and the fact that the parties lived in the house for four years. In a nonjury trial, where there is conflicting testimony, the determination of the witnesses' credibility is for the trier of fact. (*Stallings*, 75 Ill. App. 3d at 100.) Based upon all the above factors, we find that the court did not abuse its discretion by determining that the property at 209 South LeGrande was marital property.

William's next contention is that the court erred in distributing the parties' assets and liabilities.

■■ Section 503 of the Act requires the court to consider the

relevant statutory factors and divide the marital property in just proportions. (*In re Marriage of Click* (1988), 169 Ill. App. 3d 48, 56.) An equitable distribution of marital property is not necessarily an equal one, and the court may award one spouse a larger share if the relevant factors warrant such a result. (*In re Marriage of Agazim* (1988), 176 Ill. App. 3d 225, 231.) The distribution must be equitable in nature, and mathematical equality is not required. (*Agazim*, 176 Ill. App. 3d at 231.) The distribution of assets rests within the sound discretion of the trial court, and its decision will not be disturbed absent an abuse of discretion. (*Click*, 169 Ill. App. 3d at 57.) The question upon review "is not whether the reviewing court agrees with the trial court but rather did the trial court in the exercise of its discretion act arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed the bounds of reason and ignore recognized principles of law so that substantial injustice resulted." *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127.

In the case at bar, the court awarded Cynthia net marital assets of approximately $24,500 and William net marital assets of approximately $24,500. Cynthia's award consisted of the equity in their home of approximately $29,000 less approximately $9,000 that she is to pay William, an annuity valued at $2,300, an automobile valued at $2,600, and a bank account valued at $61. William's award consisted of his pension fund valued at $15,189 and the approximately $9,000 in home equity that he was to receive from Cynthia.

■ The court also found that William is liable for several debts. These debts include loans totalling approximately $9,200 that William received from his mother, as evidenced by several promissory notes. The court questioned the authenticity and enforceability of these notes. This court will not second guess the trial court's determination regarding the credibility of the witnesses. (See *Stallings*, 75 Ill. App. 3d at 100.) The court also required William to be responsible for a $1,900 debt owed to a friend, a credit-card obligation and a credit union loan. The court found these to be personal debts of William and not marital obligations.

■ We find ample evidence in the record to support the court's distribution of the marital assets. This is especially true when the relative future earning capacity of each party is addressed. William is an air traffic controller with income of over $60,000 annually. Cynthia has relatively few skills and hopes to earn approximately $14,000 in the coming year. This factor (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)(10)) is heavily weighted in Cynthia's favor.

From our review of the court's award, we cannot say that the

court acted "arbitrarily without the employment of conscientious judgment." (*Lee*, 78 Ill. App. 3d at 1127.) The court did not abuse its discretion in distributing the parties' assets, determining that the debts were not marital and requiring William to satisfy these debt obligations.

■ William also contends that the court erred in awarding maintenance of $500 per month for one year, reviewable at the end of one year. William contends that there was no evidence of Cynthia's needs produced at trial upon which the court could base an award of maintenance. William contends that Cynthia's affidavit of income and expenses should not be considered as sufficient evidence to support an award of maintenance because it was four months old at the time of trial and it included expenses related to her children from a previous marriage. While this affidavit may not be the "perfect" evidence of income and expenses, we find that it is sufficient evidence for the court's award of maintenance. An award of maintenance is within the court's discretion and will not be disturbed on appeal unless it is an abuse of discretion or against the manifest weight of the evidence. (*In re Marriage of Hughes* (1987), 160 Ill. App. 3d 680, 687.) We find, based upon the evidence provided, it was not an abuse of discretion or against the manifest weight of the evidence for the court to award Cynthia $500 a month reviewable at the end of 12 months.

■ William contends that the "total" award, when viewed comprehensively, is an abuse of discretion. It is true that the issue of maintenance is interrelated with the distribution of marital property. (*Hughes*, 160 Ill. App. 3d at 688.) The court has given Cynthia the benefit of another $6,000 to the detriment of William. However, this does not make the court's award an abuse of discretion. The important factor we believe is the huge difference in the parties' earning capacity. An important objective in dissolving a marriage is to attempt to place the parties in a position from which they can begin anew. (*Lee*, 78 Ill. App. 3d at 1133.) William is in a position with his income, or will be very shortly, to begin anew.

■ ■ William also contends that the court erred in requiring him to pay $3,500 of Cynthia's attorney fees. Section 508 of the Act provides that the court may require either party to pay a reasonable amount of attorney fees incurred by the other party in any proceeding under the Act. (Ill. Rev. Stat. 1987, ch. 40, par. 508(a).) An award of fees is justified when one party has demonstrated a financial inability to pay and the other party's ability to pay. (*In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1027.) Financial inability exists when payment of fees would strip the individual of his or her means of sup-

port and undermine his or her economic stability. (*Smith*, 128 Ill. App. 3d at 1027.) An award of attorney fees is within the trial court's discretion and will not be reversed absent an abuse of discretion. *Smith*, 128 Ill. App. 3d at 1027.

■■ Again, we find that the court did not abuse its discretion in requiring William to pay $3,500 of Cynthia's attorney fees. The court could have found from the evidence presented that Cynthia was financially unable to pay the fees and doing so would have undermined her economic stability. Similarly, the court could have reasonably found that, with William's income, he had the ability to pay. The court did not err in awarding Cynthia attorney fees.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

UNVERZAGT, P.J., and WOODWARD, J., concur.