*In re* MARRIAGE OF CORAL L. MOLL, Petitioner and Counterrespondent-Appellee, and DAVID L. MOLL, Respondent and Counterpetitioner-Appellant.

Second District   No. 2—91—0956

Opinion filed July 30, 1992.

John A. Leemon, of Mount Carroll, for appellant.

Karl F. Winkler, of Rockford, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

Respondent, David A. Moll, appeals that part of the circuit court's order of dissolution of marriage that apportioned the marital property. The circuit court awarded to David the proceeds of certain unsecured loans, which David had unilaterally made to his father using marital funds (David's father's notes). Petitioner, Coral L. Moll, was awarded two parcels of land totalling 218 acres (the farm property), which Coral and David owned as tenants in common, but which David had again unilaterally leased to his father and brother. David asserts that: (1) the marital property was unjustly apportioned; (2) the circuit court failed to consider all relevant statutory factors (see Ill. Rev. Stat. 1987, ch. 40, par. 503); (3) the circuit court failed to consider the ef-

fect its award of the farm property to Coral would have on the farming operation of David's father and brother (Moll family farming operation); (4) the circuit court incorrectly found David's conduct in unilaterally loaning money and leasing the farm property to the Moll family farming operation to be improper and considered such conduct as a factor in apportioning the marital property; (5) the circuit court considered improper evidence of valuation; (6) the circuit court improperly valued David's father's notes; (7) the circuit court failed to assign a portion of both the farm property and David's father's notes to each party; and (8) the circuit court failed to consider David's contribution to the family after the separation of the parties and before the order of dissolution.

The parties were married in 1970, at which time Coral was 17 years old and David was 19 years old. During the almost 20 years prior to their separation, three children were born, Rachael, Aaron, and Monica, ages 20, 17, and 15, respectively, at the time of the dissolution proceeding. Shortly after their marriage, the parties moved into a farmhouse on one of David's father's farms, where they lived rent free, although the parties provided services to David's father as part of the families' farming operations. After the parties' separation in April 1990, David continued to live in that house with Monica and Aaron, and Rachel attended college studying to become a nurse. David paid a portion of Rachel's college expenses, and she provided the balance of her needs.

Beginning immediately and throughout most of their marriage, Coral and David operated their own farm, as did David's father and brother. Both Coral and David participated in the operation of the farm, although David performed the majority of the field work while Coral raised their family. In 1986, health reasons forced David to give up farming as a livelihood. David then began work at Kelly Springfield Tire Company, where he continued to work at the time of these proceedings. However, he continued to participate in his father's and brother's farming operations. In 1987, for the first time in their marriage, Coral began working outside the home.

As is common in families with several generations devoted to farming, David and Coral's finances were inexorably intertwined with that of David's father and brother with minimal record-keeping. In 1986, when David and Coral ceased farming, their equipment and livestock were sold with little cash remaining after the payment of taxes and outstanding liens. At that time, cattle that David and Coral owned jointly with David's father were also sold, realizing a net profit to David and Coral of $84,810.42. David immediately loaned that

amount to his father in exchange for unsecured notes from his father. The notes were payable to David alone and lacked any indication of an interest rate or due date.

In 1987, David's father loaned David and Coral $10,000 to purchase a Chevy Eurosport car which Coral was using at the time of the dissolution proceeding. The $10,000 was offset against the balance of David's father's notes. Although no note was executed reflecting this transaction, Coral admitted the partial repayment of David's father's notes. At the time of the dissolution proceeding, David was driving the parties' 1987 Dodge Raider, which had an outstanding loan of $1,100 and had been acquired from Coral's parents. In addition, the parties' 1978 Ford truck, which had an outstanding loan of $1,066, was being driven by David's father.

In June 1989, David and Coral, together with David's father and brother and their respective spouses, accomplished a restructuring of all of the debt associated with the Moll family farming operation. The restructuring was based on a five-year special interest rate at 2% to 3% less than the then prevailing rate, which was extended to all property within the restructuring. The restructuring was premised on the repayment abilities of all of the property and of all of the members of the Moll family, including David and Coral. As a result of that restructuring, David and Coral purchased the farm property from David's parents at a price of `$324,800. To accomplish this purchase, David and Coral assumed the existing mortgage in addition to making a down payment of $64,000. The funds for the down payment were comprised of David and Coral's savings in addition to loans from their children's savings, against their insurance policies, against Coral's car and a car driven by Aaron, and an advance on the rental of the acreage.

After the restructuring, David immediately leased the farm property for a term of five years to a company operated by David's father and brother at an annual rent of $26,562.50. The lease provided that the income of $3,000 received from the rental of the home located on the farm property was payable to David's father, which David testified was in lieu of rent from the house occupied by David and Coral at that time and eventually by David and the children. The annual rent from the farm property was insufficient to pay the annual mortgage, taxes, and insurance of $29,562.50, $4,576, and $653, respectively, without regard to any maintenance costs. David alone executed the lease with his father and brother.

In January 1990, David executed a note to his father for $12,000, which David testified was used to make the biannual mortgage pay-

ment on the farm property. In addition, David's father made two loans to David of $6,000 each in June and July 1990 to pay the notes on Coral's car and Aaron's car. In September 1990, David's father loaned him an additional $6,000, of which $5,000 was used to repay Rachel's notes so that she could purchase a car. David testified that these amounts, unlike the $10,000 used to purchase the Chevy Eurosport in 1987, were loans rather than repayment of David's father's notes. This was necessary because the restructuring required David's father to repay the secured mortgages within the restructuring agreement prior to unsecured notes. Each of these notes was executed by David alone and, similar to his father's notes, contained no due date or interest rate.

Thus, the marital assets included the cars and trucks, the farm property, and the notes from David's father. The marital liabilities included the mortgage on the farm property, the balance of the notes to the parties' children, and the notes to David's father. Neither the distribution of the household goods between David and Coral nor two cemetery plots valued at $2,000, David's pension of approximately $2,000, and David's one-fourth share of a 1978 semitractor of indeterminate value, which were awarded to David, are disputed.

Coral's expert valued the farm property at between $1,750 and $1,600 per acre or $367,150. David's expert valued the property at $1,100 per acre, or $240,000, specifically because the long-term lease lowered its value. David's expert further testified that the value of the land without the lease was closer to the value determined by Coral's expert. David's affidavit valued the land at $327,000, which he arrived at by extending the rounded per-acre purchase price used in the restructuring. David testified that the balance on the notes owed by his father was $74,000 or $76,000, plus interest.

The circuit court valued the farm property at $324,800, which was the amount the parties had paid for the property two years before at the time of the restructuring, subject to the mortgage of $256,000, and it awarded the farm property to Coral for a total award of marital assets of $68,800. David was awarded the net of the notes from his father, which the circuit court valued at $75,000. David was ordered to pay the 1990 taxes on the farm property, the outstanding loans on the truck he was driving and that driven by his father, and each party was to repay a portion of the children's notes. Thus, the net award to Coral was $66,300 and to David, $68,100, plus the other undisputed property David received.

David appeals, asserting that the circuit court abused its discretion because: (1) the marital property was unjustly apportioned; (2)

the court failed to consider all the relevant statutory factors (see Ill. Rev. Stat. 1987, ch. 40, par. 503); (3) the court failed to consider the effect its award of the farm property to Coral on the Moll family farming operation; (4) the court improperly found David's conduct in unilaterally loaning money and leasing the farm property to be improper and considered such conduct as a factor in apportioning the marital property; (5) the circuit court considered improper valuations of the marital property; (6) the circuit court improperly valued David's father's notes; (7) the court failed to assign a portion of both the farm property and David's father's notes to each party; and (8) the circuit court failed to consider David's contribution to the family after the separation of the parties and before the order of dissolution. More succinctly argued, David asserts that (1) the court's valuations of the two predominant marital assets, the farm property and David's father's notes, were against the manifest weight of the evidence; and (2) the circuit court abused its discretion in apportioning the marital assets and liabilities.

Valuation of marital assets is for the trier of fact, and a valuation within the range presented by the evidence will not be disturbed on appeal. (*In re Marriage of Olson* (1992), 223 Ill. App. 3d 636, 646; *In re Marriage of Stone* (1987), 155 Ill. App. 3d 62, 71.) The court cannot determine such value without competent evidence. (*In re Marriage of Stone*, 155 Ill. App. 3d at 71.) However, it is the burden of the parties to present evidence for the court's consideration. (*In re Marriage of Benz* (1988), 165 Ill. App. 3d 273, 285.) We will not reverse and remand an order of distribution when a party had ample opportunity to present evidence of value and failed to do so. *In re Marriage of Benz*, 165 Ill. App. 3d at 285.

Coral's expert testified that the land was worth between $1,750 and $1,600 per acre or $367,150. David himself in his affidavit attested that the land was worth $327,000, which was an approximation of the value of the land at the time of the restructuring. Finally, David's expert testified to a value of $1,100 per acre or $240,000, but that such value was depressed due to the long-term lease that David had executed with his father and brother and that absent the lease the value determined by Coral's expert was accurate.

■ In valuing the land at $324,800, the circuit court indicated that it was using the value placed on the land two years prior at the time of the restructuring. Not only was such value admitted by David himself, but was well within the range testified to by both parties' experts. Therefore, we find that such value was not against the mani-

fest weight of the evidence. See *In re Marriage of Olson*, 223 Ill. App. 3d at 646.

The second significant asset of the parties was the obligation of David's father, evidenced by his notes payable to David alone. David's father executed the unsecured notes in 1986 in exchange for the loan of $84,810.42 in cash, which was David's and Coral's share of the profits from the sale of cattle when the couple stopped farming.

David himself placed the value of his father's notes at $74,000 or $76,000, plus interest. Coral's counsel argued that the notes were in fact worth something in excess of $84,000 after allowing appropriate credits for David's notes, his father's 1987 partial repayment, and the addition of interest at $9\frac{1}{4}\%$. The court expressly relied on David's testimony and Coral's counsel's argument in valuing the notes. It further allowed David the opportunity, which he failed to exercise, to substitute more definitive numbers for the calculation of such value. Therefore, we interpret David's challenge to the valuation of his father's notes to pertain only to their worth relative to David's father's entire financial position and not the method of calculation.

■ David asserts that the unsecured notes were worth less at the time of this proceeding because of the priority of the restructuring loans against David's father's only collateral, his farming operation. However, although David offered evidence that the notes occupied a fourth position after the liens created by the restructuring, he offered no evidence that such position was inferior to the notes' unsecured status prior to the restructuring. Rather, David testified that the restructuring agreement was necessary to consolidate the then existing debt on his father's and brother's farming operations, which threatened the existence of the farming operation. Thus, there was some evidence, and certainly the inference, that the collateral that secured the restructuring obligations at the time of this proceeding was equally encumbered at the time the unsecured notes were executed. Therefore, the circuit court's finding that David's father's notes had a net value of $75,000 was not against the manifest weight of the evidence.

Having found that the circuit court's valuations of the farm property and of David's father's notes were not against the manifest weight of the evidence, we next turn to David's assertion that the court abused its discretion in apportioning such property. To successfully assert an abuse of discretion in the circuit court's apportionment of marital property, it must be shown that the circuit court acted " 'arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed[ed] the bounds of reason and ig-

nor[ed] recognized principles of law so that substantial injustice resulted.' " (*In re Marriage of Jacks* (1990), 200 Ill. App. 3d 112, 119, quoting *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127; see *In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1024-25, citing *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127.) Equal distribution is not required (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37), and an equitable distribution may be best achieved by unequal apportionment if relevant factors warrant unequal apportionment (*In re Marriage of Jacks*, 200 Ill. App. 3d at 119). In apportioning marital property, the court is required to take into account the statutory factors, together with other factors deemed relevant in any particular case. (*In re Marriage of Aschwanden*, 82 Ill. 2d at 37.) The statutory factors include: (1) the contribution or dissipation of both parties to the marital property; (2) the value of other property given to each spouse; (3) the duration of the marriage; (4) the economic circumstances of each party at the time of division of the property, specifically, the desirability of an award of the marital home to the party with custody of minor children; (5) obligations arising from a prior marriage; (6) an antenuptial agreement; (7) the age, health, station, occupation, education and abilities, amount, and sources of income available to meet each party's needs; (8) the custody of minor children; (9) any award of maintenance; (10) the opportunity of each party for acquisition of future assets and income; and (11) tax consequences of the property division. Ill. Rev. Stat. 1987, ch. 40, par. 503(d).

■ In this instance, we find the farm property and David's father's notes to be merely a share of David's family's farming operation, which is analogous to a closely held business. Similar to a closely held business that depends for its success on the skills of the owner/operator, the family farming operation is dependant on the unique skills and talents of David's family, which we deem to be an extension of David under the peculiar facts presented here. Thus, we find precedent addressing the court's discretion in apportioning closely held businesses to be persuasive. Both finality to avoid continued need for court intervention (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 459) and division of the property to avoid ongoing association between the parties are goals to be considered in apportioning such marital assets (*In re Marriage of Banach* (1986), 140 Ill. App. 3d 327, 331; *In re Marriage of Hellwig*, 100 Ill. App. 3d at 459).

The court found the total marital estate to be valued at $134,400, exclusive of vehicles and other personal and household property not at issue. The court noted that David received more of the parties' house-

hold goods and the one-fourth share of the tractor trailer and expressly considered that fact in apportioning the remaining property. The court awarded David property valued at $68,100, consisting of his father's notes plus interest, less offset for David's own notes to his father, and a portion of the parties debts to their children. Coral received property valued at $66,300, which included the farm subject to the mortgage and a portion of the parties' debts to their children. Thus, David received slightly more than 50% of the parties' marital property and Coral received slightly less than 50%.

▉ Equal distribution of marital property is favored unless the statutory factors demonstrate that such distribution will be inequitable. (*In re Marriage of Jacks*, 200 Ill. App. 3d at 119.) We must now consider such equal distribution between David and Coral in light of such statutory factors to determine if the circuit court abused its discretion in failing to apportion more than 50% of the parties' assets to David.

In this instance, the circuit court considered the length of the parties' marriage; the relative contribution of each to the marital estate; the age, education, and the like of each of the parties; the ability of each of the parties to generate future assets or income; and the separate property awarded to David. (See Ill. Rev. Stat. 1987, ch. 40, pars. 503(d)(1), (d)(2), (d)(3), (d)(4), (d)(7), (d)(10).) David asserts that the court failed to consider the contribution of David to the family after the parties' separation and prior to the order of dissolution. This argument then reasons that David is entitled to a greater share of the marital property than Coral because, during the marriage, he contributed a greater share to the acquisition of the marital estate. However, the record reflects that the court adequately considered the contribution of each of the parties to the acquisition of the marital estate. (See Ill. Rev. Stat. 1987, ch. 40, par. 503(d)(1).) It found Coral's contribution to the marriage for 18½ years as a farm wife and homemaker, and eventually as a wage earner, to be equal to David's contribution as a farmer and wage earner for the same period in addition to his contribution as a homemaker for 18 months after the parties' separation.

The balance of the statutory factors are inapplicable in this case. Aaron reached majority shortly after this proceeding, and David thereafter had custody of only Monica, for whom Coral was ordered to pay support. Therefore, we find that David's custody of the minor children did not justify a disproportionate award. (See Ill. Rev. Stat. 1987, ch. 40, par. 503(d)(8).) David asserted that such custody warranted the circuit court's award of the farm property to David as the

marital home. (See Ill. Rev. Stat. 1987, ch. 40, par. 503(d)(4).) The circuit court, however, rejected such argument because David did not reside on the farm property with the children. There was no antenuptial agreement (Ill. Rev. Stat. 1987, ch. 40 par. 503(d)(6)), no prior obligations from previous marriages (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)(5)), and no award of maintenance (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)(9)). Finally, neither David nor Coral offered any evidence of the tax consequences of the distribution for the court's consideration. (See Ill. Rev. Stat. 1987, ch. 40, par. 503(d)(11); *In re Marriage of Olson*, 223 Ill. App. 3d at 650 (speculative tax consequences are inappropriate for circuit court's consideration).) Thus, we find that the circuit court considered all the relevant applicable statutory factors in this instance.

■■ David argues, however, that the circuit court improperly considered his conduct in loaning marital funds to his father and in leasing the farm property to his father and brother as a dissipation of marital property. The record does not support this conclusion. The court expressly indicated that it did not consider the loan to be such a dissipation because no separation was contemplated at the time the loans were made. Further, the circuit court considered the lease as a factor, not in apportioning the marital estate, but rather in determining the value of the farm property. The circuit court found that David could not unilaterally act to lower the value of such a marital asset and then claim the benefit of such an act. Moreover, the source of a marital debt, the party who signed for the debt, and the overall circumstances of the parties are appropriate considerations in apportioning debt. (See *In re Marriage of Schaufelberger* (1983), 120 Ill. App. 3d 114, 116.) We see no reason to ignore similar considerations in apportioning marital assets.

■■ Finally, David asserts that the circuit court failed to consider other nonstatutory factors. He asserts that the court failed to consider Coral's inability to meet obligations arising from the farm property and the effect of such possible inability on the Moll family farming operation. The record also belies this assertion. The court expressly stated that it agonized for many hours and days in reaching its decision. It was keenly aware of the part that the farm property played in the entire Moll family farming operation. The court provided an option by which David could purchase the farm property from Coral during the term of the lease for $68,800 plus any principal payment made by Coral and provided a right of first refusal during the same term to protect the interests of the Moll family farming operation.

On David's motion for reconsideration, the court acknowledged the problem created by Coral's lack of financial ability and modified its order to provide that no quitclaim be executed from David to Coral until all claims against the farm property were fully settled and to allow David to pay any deficit and be reimbursed from the proceeds of any such sale. Therefore, the court not only considered the applicable statutory factors, but the other relevant factors in equally apportioning the parties' marital estate.

■ David also asserts that the court abused its discretion in awarding the farm property entirely to Coral and awarding David's father's notes entirely to David. He asserts that a more equitable distribution would have resulted had the parties each shared in both the farm and notes until such time as the lease expired and both the farm property and David's father's notes could be untangled from the Moll family farming operation. Such an argument ignores, however, an equally important goal to be achieved in the apportionment of the marital estate. Finality, both to avoid future court intervention and to allow the parties to plan their futures with some certainty, is also a goal to be achieved by the allocation and division of property. (*In re Marriage of Hellwig*, 100 Ill. App. 3d at 459.) An ongoing business association between former spouses, such as would have been required in the management of the farm property, is disadvantageous. (See *In re Marriage of Hellwig*, 100 Ill. App. 3d at 459-60.) The circuit court carefully considered the complicated and intertwined affairs of David and Coral and the entire Moll family in light of these goals. We find that the apportionment achieved by the circuit court was not arbitrary and did not lack "conscientious judgment" or "exceed the bounds of reason and ignore recognized principals of law" so as to be an abuse of discretion. (See *In re Marriage of Jacks*, 200 Ill. App. 3d at 119.) We therefore reject David's attempt to have us substitute our judgment for that of the circuit court.

The circuit court's valuations of the two major assets in the marital estate were not against the manifest weight of the evidence, and the court properly considered all the relevant statutory and other factors in apportioning those assets and did not abuse its discretion in so doing. Therefore, the order of the circuit court apportioning the marital estate of David and Coral Moll is affirmed.

Affirmed.

INGLIS, P.J., and DUNN, J., concur.