*In re* MARRIAGE OF DIANE ZIRNGIBL, Petitioner-Appellee, and RICHARD ZIRNGIBL, JR., Respondent-Appellant.

First District (5th Division)   No. 1—89—3344

Opinion filed September 30, 1991.—Rehearing denied January 15, 1993.

Ilene E. Shapiro and Kalcheim, Schatz & Berger, both of Chicago, for appellant.

No brief filed for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Richard Zirngibl, Jr. (Richard), respondent, appeals from portions of an April 17, 1989, dissolution of marriage judgment and an order denying his motion to reconsider the issues generating from portions

of the April 17, 1989, order. No brief has been filed on behalf of Diane Zirngibl (Diane) and Diane did not appear at oral arguments.

On appeal Richard raises the following issues for review:

(1) Whether the trial court abused its discretion in finding that Richard had dissipated marital assets;

(2) Whether the trial court abused its discretion by ordering the immediate sale of the former marital home;

(3) Whether the trial court abused its discretion in reserving the issue of Diane's obligation, if any, to pay child support; and

(4) Whether the trial court abused its discretion in reserving Diane's right to maintenance subject to review in two years.

The facts underlying this case disclose that Diane and Richard were married on July 5, 1969. They separated on July 13, 1986, at which time Diane left the marital home. Diane filed her petition for dissolution on July 31, 1986. Two children were born as a result of the marriage: Michael on April 14, 1972, and Mary on September 16, 1980. Initially Diane had physical custody of Mary, but ultimately custody was transferred to Richard pursuant to a joint parenting agreement. Since September 1, 1987, Richard has borne sole financial responsibility for the children.

Diane worked on and off during the marriage. At the time of the trial, Diane was 41 years old. She was a high school graduate. Diane had no subsequent training in any vocation. In June of 1985, Diane began working at her mother's tavern on a part-time basis. In September 1986, she began working at the tavern full time. Diane earned a net salary of $180 per week for a six-day workweek. Diane repeatedly contended that the patrons of the bar never left tips.

At the time of the trial Richard was a structural iron worker earning $19.24 per hour. The demand for his services fluctuated based on economic influences, the health of the construction industry and weather conditions. During the previous years, there were periods of time when Richard was unemployed or was between jobs. However, Richard always worked at least 1,000 hours per year as an ironworker, which is the minimum amount required by the union in order to maintain health insurance and participation in the pension plan.

During the marriage the parties acquired a home located at 3004 W. Columbus Avenue, Chicago, Illinois. Diane claimed the house was worth $60,000. Richard claimed it was worth $43,000.

The parties acquired a joint bank account at the First National Bank of Evergreen Park. The source of these funds was a workmen's compensation award and a related lawsuit. Immediately prior to the parties' separation, the account had a $33,306.72 balance. Contempo-

raneously or immediately subsequent to the separation, Richard began removing the funds from the account. Richard made cash withdrawals. One withdrawal was for $25,000; withdrawn in $100 bills. By August 26, 1987, the account was completely depleted.

Richard had two retirement plans with his union that the value and disposition of are not disputed. IRA accounts in each of the parties' names had a proximate value of $2,250. The final asset of the parties appears to be a 1985 Volvo that was valued at $10,000.

The trial court conducted the trial on the contested financial issues on June 9, 1988, August 1, 1988, August 10, 1988, and October 3, 1988. Both parties were represented by counsel. The trial court heard the testimony of each of the parties and considered various trial exhibits submitted by each of them. Closing arguments were heard on October 3, 1988. On March 15, 1989, the court entered its memorandum order setting forth its decision. Pursuant to the "Hunt formula," the court ordered that the marital portion of Richard's retirement plans be allocated 60% to Richard and 40% to Diane. The court found that Richard had dissipated $20,000 of marital assets. It awarded the Volvo automobile to Diane as a partial share of the dissipated assets. The court ordered that the former marital home be placed for immediate sale with a broker mutually selected by the parties for an asking price of not less than $43,000 and not more than $60,000. The parties would be required to accept the first offer in excess of $43,000, unless they mutually agreed otherwise. From the gross sales proceeds there would be deducted those sums which are customarily charged incident to a sale, including the outstanding real estate taxes, broker's commission, title charges and legal fees. Diane would then be paid the sum of $5,000 to compensate her for the dissipation of marital assets. Each party would thereafter be awarded one-half of the remaining net proceeds of the sale. Each party would receive the IRA account in his or her respective name. Diane's child support obligation to the minor children would be reserved. Diane's right to receive maintenance from Richard would also be reserved, subject to review in two years.

On April 17, 1989, the court entered a judgment for dissolution of marriage incorporating its memorandum order. On June 13, 1989, Richard filed a motion to reconsider. Richard contended that the trial court misapprehended the evidence and miscalculated the amount, if any, of the dissipation of marital property by virtue of his withdrawals from the parties' joint savings account. He requested that the trial court reconsider its ruling on the division of property. Specifically, he argued that he should be awarded a one-half interest in the former marital home with the provision that it be sold when Mary reaches

the age of majority. He further requested that the trial court reconsider its decision relieving Diane of any obligation to pay current child support and reserving her right to seek maintenance subject to review in two years.

On August 14, 1989, Diane filed a motion to reconsider, requesting the court to adjust its allocation of the net proceeds of the sale of the former marital home to fully compensate her for Richard's dissipation.

On September 20, 1989, the trial judge entered a memorandum order amending his prior decision in part. He awarded Richard the Volvo automobile. He required Richard to pay Diane $15,000 of the net proceeds from the sale of the former marital home in order to compensate her for her one-half interest in the Volvo and to "some what equalize the property dissipated by" him. The court did not disturb its prior rulings reserving child support and maintenance.

We note first that petitioner has failed to file an appellee's brief. Because the record in this case is clear and the issues may be decided without the aid of an appellee's brief, we shall decide the appeal on its merits. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

For the following reasons, we affirm in part and reverse and remand in part.

### DISSIPATION

Immediately prior to their separation, the parties had approximately $33,306 in a joint savings account. The funds in the account were the remaining proceeds from a worker's compensation settlement and another settlement Richard had received as a result of a serious injury on the job. Richard withdrew the funds from the account in cash, which he then hid in the marital home. Richard claims that he used the cash to pay expenses of the household.

The trial court found that of the approximately $35,000 that Richard withdrew from marital bank accounts, Richard must have expended some funds for food, clothing and necessities of life. The court concluded that the income Richard had through employment was insufficent to provide for his and the children's necessary expenses and inferred that he was required to use an additional $15,000 from the $35,000 he had in his possession. To that extent, the trial court found there was no dissipation. The result was a finding that Richard dissipated $20,000 of marital funds.

Richard's primary point of contention in this case is that the trial court erred in finding that he dissipated $20,000 of marital assets

based on his alleged failure to adequately account for funds he withdrew from the parties' joint savings account at the First National Bank of Evergreen Park. Richard argues that this finding was a misapplication of the law concerning dissipation, contrary to the manifest weight of the evidence, and hence, an abuse of discretion.

■■ We find *In re Marriage of Rai* (1989), 189 Ill. App. 3d 559, 565, 545 N.E.2d 446, 449-50, helpful in analyzing this issue. In *Rai*, the court stated the following:

"Dissipation has been defined as one spouse's use of marital property for his or her own benefit for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. [Citation.] *** Whether a given course of conduct constitutes dissipation depends upon the facts of each case. [Citation.] The explanation given by the spouse charged with dissipation as to how funds were spent requires the trial court to determine his or her credibility. [Citation.] Where the funds are spent for legitimate family expenses, and necessary and appropriate purposes, there is no dissipation. [Citation.] The spouse charged with dissipation of marital funds has the burden of showing, by clear and specific evidence, how the funds were spent. [Citation.] If expenditures are not documented adequately by the person charged with dissipation, courts will affirm a finding of dissipation. [Citation.] General and vague statements that funds were spent on marital expenses or to pay bills are inadequate to avoid a finding of dissipation. [Citation.] Whether there was dissipation is a matter for the trial court's discretion, and a finding concerning dissipation will not be disturbed unless it is against the manifest weight of the evidence."

See also *In re Marriage of Hensley* (1991), 210 Ill. App. 3d 1043, 1053, 569 N.E.2d 1097.

■ Where a party has dissipated assets, the court may charge the amount dissipated against his or her share of the marital property so as to compensate the other party. *In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 550, 511 N.E.2d 676, 680; *In re Marriage of Block* (1982), 110 Ill. App. 3d 864, 870, 441 N.E.2d 1284.

The trial court found that Richard failed to account for his expenditure of $20,000 in funds with "clear and specific evidence." Further, the trial court found that Richard was not a credible witness. Generally a reviewing court will not disturb the trial court's determination of credibility because the trial court has a unique opportunity, which cannot be reproduced from the cold inanimate record, to ob-

serve and judge the witness' demeanor and credibility. (*Szesny v. Szesny* (1990), 197 Ill. App. 3d 966, 557 N.E.2d 222; *In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 28, 500 N.E.2d 612, 616.) A reviewing court will not overturn a trial court's determination of credibility unless it appears contrary to the manifest weight of the evidence. *In re Marriage of Wescott* (1987), 163 Ill. App. 3d 168, 178, 516 N.E.2d 566, 570; *In re Marriage of Getautas* (1989), 189 Ill. App. 3d 148, 155, 544 N.E.2d 1284.

■ The determination that a trial court abused its discretion does not turn upon whether the reviewing court agrees with the trial court's distribution of assets, but whether the trial court acted arbitrarily without the employment of conscientious judgment. (*Head v. Head* (1988), 168 Ill. App. 3d 697, 702, 523 N.E.2d 17, 21.) An abuse of discretion occurs only where no reasonable person could take the view adopted by the trial court. (*In re Marriage of Kaplan* (1986), 149 Ill. App. 3d at 31, 500 N.E.2d 612.) We cannot say that no reasonable person could take the view adopted by the trial court in this case. We do not find that the trial court abused its discretion in finding that Richard dissipated $20,000 of marital funds. Accordingly, we affirm the trial court's finding that Richard dissipated $20,000.

■ Richard further argues that the trial court committed reversible error in denying admission of three ledger sheets into evidence. The ledger sheets were a summary of Richard's expenditures by check. Diane's counsel did not want the document admitted as she did not necessarily agree with the classification of the checks. When discussing the admission of the summary documents, the trial judge stated:

> "I'd like to be able to leave the attorneys with the task of deciding whether or not the summary in some way—that the summary does reflect the check[s] that were written. If the parties cannot agree through their attorneys, then I will go through the checks myself."

In light of the trial judge's comment that he would review the checks himself if the summary document was not admitted into evidence, we do not find any error in denying the admission of the ledger sheets.

### SALE OF THE MARITAL HOME

The trial court ordered the immediate sale of the former marital home. Citing *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126, and *In re Marriage of Calisoff* (1988), 176 Ill. App. 3d 721, 531 N.E.2d 810, the trial court commented that Diane is entitled

to obtain from the marriage a meaningful sum of cash with which to begin her new life.

Richard argues that the trial court's order requiring the immediate sale of the former marital home was a misapplication of the governing statute and an abuse of discretion. Richard argues that ordering the immediate sale of the marital home would undermine the welfare and stability of the two minor children and that he should have been awarded exclusive possession of the former marital residence until Mary's eighteenth birthday, at which time he could sell the home and compensate Diane for any alleged dissipation.

■■ As Richard argues, the court in *Calisoff* did not address the issue of the desirability of the custodial parent residing in the martial home. However, the *Lee* court stated:

"The primary objective of the courts in fashioning an equitable division of property is to provide adequate support for the children. The second objective is to dissolve the marriage and place the parties in a position from which they can begin anew." *Lee*, 78 Ill. App. 3d at 1133.

In *Lee*, this court found that the trial court had considered the relevant circumstances of each spouse when the division of property was to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children. The wife was awarded custody of the children and permitted to reside, without an obligation to pay rent, in the apartment that had been the marital residence. The trial court preserved the husband's one-half interest in the apartment building and only barred the husband from filing an action for partition until the youngest child reached majority. *Lee*, 78 Ill. App. 3d at 1134.

In the instant case, the former marital home, commonly known as 3004 W. Columbus Avenue, Chicago, Illinois, has a present fair market value of between $43,000 and $60,000 and is the only marital asset of substantial value. Richard, who has the physical custody of the parties' two children, alleges that he was desirous of providing the children with a stable and consistent environment. He sought an award of exclusive possession of the home until Mary's eighteenth birthday to accomplish this goal.

●6 Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 503(d)) enumerates some of the relevant factors which the trial court is required to consider in the division of marital property in just proportion. Among these factors are:

"(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children." Ill. Rev. Stat. 1989, ch. 40, par. 503(d)(4).

In *In re Marriage of Brenner* (1981), 95 Ill. App. 3d 100, 419 N.E.2d 400, the trial court ordered that the family home be sold at the time of the dissolution of the marriage and the proceeds from the sale be divided between the parties after the husband received certain credits based on mortgage payments he had made. On appeal, the wife contended that as the custodial parent of the parties' two minor children she should be permitted to remain in the family home until the youngest child (age 12 at the time of trial) reached majority. This court agreed with her and stated:

"Section 503(c)(4) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(4)) provides that 'the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children' is a relevant factor in dividing marital property. The adverse effect which dissolution of a marriage has on children is self-evident. Therefore, where possible, children should be afforded continuity in their environment in order to reduce the emotional disruption caused by the separation of their parents. One of the ways this can be accomplished is by affording the children continued residence in the family home." (*Brenner*, 95 Ill. App. 3d at 102, 419 N.E.2d at 402.)

The *Brenner* court remanded the case to the trial court so that a provision could be made for the continued use of the marital residence by the custodial parent and the children for a reasonable period of time.

The trial court is to consider custodial provisions made for any children in dividing marital property, and the desirability of awarding the marital residence, a right to live therein and for reasonable periods, to the spouse having custody of the children. See *In re Marriage of Sheber* (1984), 121 Ill. App. 3d 328, 459 N.E.2d 1056; *In re Marriage of Wiley* (1990), 199 Ill. App. 3d 169, 178, 556 N.E.2d 809.

In a dissolution of marriage proceeding, the trial court did not err in awarding wife possession of the marital home until the youngest child became emancipated; and even though this event might not occur for nine years, the period of possession awarded to the wife was not unreasonable. (*In re Marriage of Woolsey* (1980), 85 Ill. App. 3d 636, 406 N.E.2d 1142.) The second district in *In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 427 N.E.2d 1262, and in *In re*

*Marriage of Agazim* (1988), 176 Ill. App. 3d 225, 530 N.E.2d 1110, ordered immediate sale of the respective marital homes notwithstanding the desirability of awarding the family home or the right to live therein for reasonable periods to the custodial parents. Both cases noted that keeping the children in the marital home is but one factor to be addressed in distributing the marital property. In *Agazim*, the court held: "Here that factor was clearly outweighed by the need to give [the husband] sufficient funds so that he could pay child support, provide for his new family's needs, and pay off his outstanding debts." (*Agazim*, 176 Ill. App. 3d at 236, 530 N.E.2d at 1117.) In *Smith* the court found that if the wife kept the house she would incur high monthly ownership costs and either maintenance or quite high child support would have been necessary and "[a] fair analysis of the husband's income shows that he would be hard pressed to pay high child support on his business income alone." (*Smith*, 100 Ill. App. 3d at 1131, 427 N.E.2d at 1266.) Thus, the *Smith* court found that the sale of the home would allow the husband sufficient funds or assets to pay reasonable child support while providing for his own needs. In both *Agazim* and *Smith* the court was considering the ability of the noncustodial parent to make child support payments.

Richard is the custodial parent. He has been the sole provider of support for the children. Diane was not ordered to make any child support payments. We do not find any indication in the record that the judge considered the desirability of awarding the right to reside in the marital home to the spouse having custody of the children.

■ Michael has now reached the age of majority and is away at college; however, his father still provides support and Michael resides with his father when school is not in session. Mary is 11 years old and still resides with her father. As of the date of oral arguments, Richard stated that Diane had more or less disappeared. He thought she might be in Las Vegas. As Diane neither filed a brief nor appeared in the case, it appears that she has lost interest in the case.

We conclude, under the facts of this case, a provision should be made for the continued use of the marital residence by Richard and the children until Mary's eighteenth birthday. Upon Mary's eighteenth birthday, the house should be sold and the proceeds divided in accordance with the trial court's decision. Accordingly, as to the issue of the sale of the marital home, we reverse and remand to the trial court to enter an order consistent with the provisions in this opinion.

## MAINTENANCE

Richard argues that it was an abuse of discretion for the trial

court to reserve maintenance to Diane for a period of two years. We first note, as of the date of oral arguments, over two years had elapsed since the date of the trial court's order reserving maintenance for two years. Also, as of the date of oral arguments, Diane had not petitioned the trial court for an award of maintenance. Due to the elapsed time, Richard's counsel conceded at oral arguments that the issue would be moot.

However, since we do not believe that the trial court abused its discretion in reserving maintenance for the two-year period, we will still address the issue.

■ In its memorandum opinion of March 15, 1989, the trial court found:

> "Maintenance from Richard to Diane shall be reserved, subject to review within two years herefrom. In re Marriage of Shafer, 122 Ill. App. 3d 991."

The court in In re Marriage of Shafer (1984), 122 Ill. App. 3d 991, 999, 462 N.E.2d 39, held:

> "Regardless of whether the court grants or denies maintenance it may consider taking a reserved-jurisdiction approach to maintenance. This would encourage the former spouse to seek employment with providing the court the opportunity to review the award at the end of a fixed period to determine what efforts the spouse has made toward achieving self-sufficiency and whether these efforts have been successful."

In In re Marriage of Lee (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126, this court held that the trial court did not abuse its discretion when it reserved the wife's right to seek maintenance for a period of six years. The necessity for and amount of an award of maintenance is a decision within the sound discretion of the trial court in each individual case. Such decisions will not be set aside unless found to be contrary to the manifest weight of the evidence, thus showing an abuse of discretion. In re Marriage of Lasota (1984), 125 Ill. App. 3d 37, 465 N.E.2d 649; In re Marriage of Bramson (1981), 100 Ill. App. 3d 657, 427 N.E.2d 285.

Based upon a review of the record, we do not find that the trial court abused its decretion in its decision to reserve the issue of maintenance for two years.

### CHILD SUPPORT

The trial court's memorandum order of September 20, 1989, states in pertinent part:

"The court finds that the imposition of child support at this time would serious[ly] diminish her capacity to sustain herself in a meaningful way, in context with her previous standard of living. RICHARD has a large income and the modest increment he would receive from DIANE would be relatively insignificant to him. In weighing the impact of requiring child support from DIANE against the meaningfulness of her contribution toward reducing RICHARD's financial burden, it is apparent that no child support award should be made at this time. *In re Marriage of Reed*, 100 Ill. App. 3d 873.

This court must also consider that DIANE will be required to expend certain sums of money to finance visitation with the children. Had this court ordered child support payments, DIANE would have difficulty in finding enough money, after meeting her own needs, to fund the expense of visitation. *In re Marriage of Mitchell*, 103 Ill. App. 3d 242. Movies recreation and occasional meals out, all cost money. This court finds that it is extremely important to children that they and their non-custodial parent have the opportunity to continue their relationship."

Richard argues that the trial court's decision reserving the issue of child support was a misapplication of the governing statute, contrary to the manifest weight of the evidence and an abuse of discretion. Richard further asserts that the trial court erred in burdening him with the sole financial responsibility for the children. We disagree.

Section 505 of the Illinois Marriage and Dissolution of Marriage Act states in pertinent part:

"(1) The Court shall determine the minimum amount of support by using the following guidelines:

| Number of Children | Percent of Supporting Party's Net Income |
|---|---|
| 1 | 20% |
| 2 | 25% |

\* \* \*

(2) The above guidelines shall be applied in each case unless the court, after considering evidence presented on all relevant factors, finds a reason for deviating from the guidelines." Ill. Rev. Stat. 1989, ch. 40, pars. 505(a)(1), (a)(2).

Unless a trial court enters written findings as to why a lesser figure is appropriate, it must order the noncustodial parent to pay at least a certain percentage of his or her income by way of child sup-

port. (*In re Marriage of Blaisdell* (1986), 142 Ill. App. 3d 1034, 492 N.E.2d 622.) The determination of child support is within the sound discretion of the trial court in each individual case and will not be set aside unless found to be contrary to the manifest weight of the evidence, thus showing an abuse of discretion. *In re Marriage of Reyna* (1979), 78 Ill. App. 3d 1010, 398 N.E.2d 641.

In *In re Marriage of Grauer* (1987), 153 Ill. App. 3d 125, 505 N.E.2d 1131, this court upheld the trial court's decision to hold the father solely responsible for child support. After making specific reference to such factors as relative earnings of the parties and their disparate financial positions, the trial court had made findings that the husband had far greater ability to support himself and the minor children without any support from the wife. *Grauer*, 153 Ill. App. 3d at 129, 505 N.E.2d at 1133.

In the present case, the trial court did enter written findings as to why it felt that Diane's obligation to pay child support should be reserved. We do not find that the trial court abused its discretion in failing to compel Diane to pay child support at a time when she could barely support herself. At the time of oral arguments Richard had never gone in to the trial court on a petition for child support. However, we note nothing precludes Richard from petitioning the trial court for child support based upon a change in circumstances of the parties at a future date.

Accordingly, for all the reasons set forth above, we affirm the decision of the trial court as to the issues of dissipation, maintenance and child support. We reverse the decision of the trial court ordering the immediate sale of the marital home and remand to the trial court to issue an order consistent with this opinion.

Affirmed in part; reversed and remanded in part.

LORENZ, P.J., and McNULTY, J., concur.