*In re* MARRIAGE OF GORDON SEVERSEN, Petitioner-Appellant, and CLAUDIA SEVERSEN, Respondent-Appellee.

First District (3rd Division)   No. 1—90—1815

Opinion filed April 29, 1992.

Paul J. Bargiel, P.C., of Chicago, for appellant.

Steven A. Miner, of Barrington, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Petitioner Gordon Seversen (Gordon) appeals from a judgment for dissolution of marriage entered on October 12, 1989. Gordon contends that the trial court erred (1) in finding that respondent Claudia Seversen (Claudia) did not dissipate $80,000 which she received in 1983 as termination benefits when she left a former job; and (2) in valuating the property.

As to the trial court's finding that Claudia did not dissipate certain funds, we modify in part and remand with directions. We affirm the trial court's valuation of the property.

The parties married on April 15, 1972. No children were born of this marriage. In March of 1981, Claudia left the marital residence, a condominium located in Palatine, Illinois, and filed a petition for dissolution of marriage. After a contested trial, the circuit court entered an order denying her petition for dissolution of marriage on April 10, 1984.

On April 16, 1984, Gordon filed a petition for dissolution of marriage. In August of 1984, Claudia reentered the Palatine condominium where Gordon was residing. By order dated October 3, 1984, the circuit court directed Claudia to vacate the marital home and barred her

from the Palatine premises. Claudia testified that she had no intention of reconciling with Gordon when she reentered the Palatine residence. Although Claudia stayed at the Palatine condominium for approximately two months in 1984, the parties do not dispute that the breakdown of their marriage occurred in March of 1981 when Claudia initially left the marital home. Claudia subsequently lived in Elgin with her daughter from a previous marriage.

At the time trial commenced in March of 1988, Gordon was 65 years old and Claudia was 48 years old. Throughout their marriage, Claudia and Gordon never had a joint checking or savings account. The parties held no joint assets with the sole exception of the Palatine real estate.

On October 12, 1989, the trial court entered its judgment for dissolution of marriage and found that Claudia had no nonmarital estate and valued Gordon's nonmarital estate between $118,046 and $161,012. The marital estate was valued at $258,178. The trial court then divided the property as follows.

Gordon was awarded the following assets:

> (1) Palatine condominium (the marital residence valued at $53,000);
>
> (2) Elmhurst home (a home acquired by Gordon prior to his marriage to Claudia and valued at $84,000);
>
> (3) Seversen Engineering (a business acquired by Gordon prior to the marriage);
>
> (4) Bloomingdale Secretarial Services (a business purchased by Gordon during the marriage and valued at $14,000);
>
> (5) a bond valued at $5,000;
>
> (6) a life insurance policy (purchased by Gordon prior to the marriage and valued at $6,655); and
>
> (7) all accounts held in Gordon's own name.

Claudia was awarded the following assets:

> (1) Pension from a former employer valued at $9,400;
>
> (2) all accounts held in Claudia's own name;
>
> (3) judgment in the amount of $62,993 to be paid by Gordon.

In addition, the trial court found that Claudia had not dissipated $80,000 which she received as termination benefits in September of 1983 when she was laid off from her job at Universal Oil Products (UOP). To account for the use of these funds, Claudia had prepared an itemized summary of expenses for the years 1983, 1984 and 1985.

On appeal, Gordon first asserts the "no dissipation" finding is erroneous because: (1) at the time Claudia received this money (1983), the marriage had irretrievably broken down since she had left the

marital home and filed for a divorce; and (2) Claudia used the money for her sole benefit for a purpose unrelated to the marriage.

Claudia responds that she accounted for the entire $80,000 to the best of her knowledge and documentary evidence was available to Gordon for the five years that this proceeding was pending. Claudia contends that she did not use the funds for a purpose unrelated to the marriage because the funds were used to provide for her needs after Gordon had obtained an order excluding her from the marital residence. Thus, according to Claudia, her use of the funds excused Gordon from any obligation of maintenance. Claudia also argues that the parties always intended to keep their funds separate as evidenced by the fact that they never maintained a joint account and no evidence was adduced of an intent to wilfully dissipate marital assets.

■ The term "dissipation" refers to "the 'use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown.' " (*In re Marriage of O'Neill* (1990), 138 Ill. 2d 487, 497, 563 N.E.2d 494 (the contested expenditure did not constitute dissipation of marital assets because there was no claim that the expenditure occurred during the time the marriage was undergoing an irreconcilable breakdown), quoting *In re Marriage of Petrovich* (1987), 154 Ill. App. 3d 881, 886, 507 N.E.2d 207 (a finding of dissipation was appropriate because the charged party offered only indefinite and unsupported testimony to explain what had happened to nearly $2 million in stock investments which he claimed was lost).) In the present case, there is no dispute that Claudia expended the contested funds at a time when the marriage was experiencing an irretrievable breakdown.

■ Whether or not a given course of conduct constitutes dissipation depends on the facts of the particular case. (*Petrovich*, 154 Ill. App. 3d at 886.) The issue of dissipation is generally a question of fact, and the trial court's findings will not be disturbed unless the trial court's decision is contrary to the manifest weight of the evidence and thus an abuse of discretion. (*In re Marriage of Zirngibl* (1991), 237 Ill. App. 3d 1049; *In re Marriage of Sobo* (1990), 205 Ill. App. 3d 357, 562 N.E.2d 1083.) Furthermore, where the facts are disputed, the credibility of the witnesses and the weight to be given their testimony are matters for the trier of fact. (*Sobo*, 205 Ill. App. 3d at 360.) The trial court's credibility determination is central to the adjudication where, as in the present case, the husband and wife are the primary witnesses. (*In re Marriage of Westcott* (1987), 163 Ill. App. 3d 168, 175, 516 N.E.2d 566.) An abuse of discretion occurs only

where no reasonable person could take the view adopted by the trial court. *Zirngibl*, 237 Ill. App. 3d 1049.

In the present case, we cannot say that no reasonable person could take the view adopted by the trial court in finding that Claudia did not dissipate $58,000 of the $80,000 she received as termination benefits. However, we find that $20,000 which Claudia used to purchase stock in a printing business and $2,000 which Claudia spent to buy a computer and a printer constitutes dissipation.

■ A person charged with the dissipation is obligated to establish by clear and specific evidence how the funds were spent. General and vague statements that the funds were spent on marital expenses or to pay bills are inadequate to avoid a finding of dissipation. (*Petrovich*, 154 Ill. App. 3d at 886; see also *In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 549-50, 511 N.E.2d 676.) Moreover, an explanation given by a spouse charged with dissipation as to how funds were spent requires a trial court to determine her credibility. *In re Marriage of Adams* (1989), 183 Ill. App. 3d 296, 538 N.E.2d 1286.

Initially we note that this dissolution proceeding lasted over five years from the time Gordon filed his petition for dissolution in 1984 until the trial court entered its judgment in 1989. Throughout those years, numerous document requests were filed and answered, depositions of the parties were taken, and trial testimony was given over the course of a year beginning in March of 1988. With all the documentary and testimonial evidence before her and with her advantage of observing the witnesses' demeanor and credibility, the trial judge found that Claudia had not dissipated funds and thus satisfactorily accounted for her expenditures.

■ We cannot say that this ruling was an abuse of discretion or against the manifest weight of the evidence. A finding of dissipation is required where the charged party fails to explain specifically how the disputed funds were spent. (*In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 482 N.E.2d 1022.) An inadequate explanation has been found where the charged party merely testified that the money was spent "to 'live on and pay the bills' " (*Partyka*, 158 Ill. App. 3d at 552) or for "his cost of living and his bills" (*Los*, 136 Ill. App. 3d at 33), and where the charged party produced no evidence (*In re Marriage of Radae* (1991), 208 Ill. App. 3d 1027, 567 N.E.2d 760). In contrast, Claudia, as the charged party, provided a detailed accounting of how the funds were spent and testified that the figures were based on cancelled checks, credit card statements, bills, receipts, and estimates for cash expenditures.

Claudia's itemization included expenses for rent, food, transportation, medical and dental care, utilities, school, job search, clothes, taxes, attorney fees for this divorce, movers, jewelry, and routine day-to-day needs. The record further reveals that when Claudia and Gordon were living together, Claudia's daughter from a prior marriage resided with them in the marital home. When Claudia and Gordon ceased living together, Claudia and her daughter then shared a residence. Moreover, Claudia was forced to vacate the marital home by court order and her motions to reenter the marital home or to receive temporary maintenance apparently remained undecided.

Gordon relies on this court's decision in *Partyka* (158 Ill. App. 3d 545, 511 N.E.2d 676), which found that the funds used by the husband to maintain and furnish an apartment after he vacated the marital home constituted dissipation. Unlike the present case, however, no court order barred the husband in *Partyka* from the marital residence when he moved into a separate apartment.

Gordon also relies on *In re Marriage of Harding* (1989), 189 Ill. App. 3d 663, 678, 545 N.E.2d 459, which stated that the "[u]se of marital property to secure housing after leaving the marital home is an expenditure for a purpose unrelated to the marriage." In *Harding*, an agreed injunction order was entered which enjoined the parties from disposing of a specified list of properties including the husband's medical practice. In violation of this injunctive order, the husband sold his medical practice and used a portion of the proceeds from the sale to buy a house. In contrast, no agreed injunction order was entered in the present case and Claudia did not sell any marital assets to purchase a nonmarital home.

■ When a couple live apart while undergoing a dissolution of marriage, the spouse who remains in the marital residence is allowed to spend marital funds for necessary, appropriate and legitimate living expenses including the maintenance of the marital residence. (*In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 453 N.E.2d 866; see also *In re Marriage of Rai* (1989), 189 Ill. App. 3d 559, 565, 545 N.E.2d 446 ("[w]here the funds are spent for legitimate family expenses, and necessary and appropriate purposes, there is no dissipation").) Similarly, the wife who occupied the marital home after the husband moved did not dissipate funds by withdrawing from marital accounts the money necessary to pay the day-to-day expenses of the wife and her children in *Sobo* (205 Ill. App. 3d 357, 562 N.E.2d 1083). The same outcome occurred in *Zirngibl* (237 Ill. App. 3d 1049), where the wife moved and the husband remained in the marital home.

To the extent that the husband expended funds for food, clothing and necessities of life, there was no dissipation.

During the dissolution of marriage proceedings in *In re Marriage of Hensley* (1991), 210 Ill. App. 3d 1043, 1046-47, 569 N.E.2d 1097, the husband vacated the marital residence. The trial court ordered that his " 'reasonable expenses caused by his having to live elsewhere than the marital home shall be taken out of marital assets on a share and share alike basis.' " Similarly, by court order, the wife in *Hensley* was allowed to withdraw " 'such amounts from time to time which are usual and necessary for living expenses for her and the two minor children of the parties.' " The husband was found to have dissipated funds because he could not account for money spent on his living expenses and he admitted that he was unsure of where all the money went.

We find the *Hensley* case instructive because the underlying principle recognizes that marital assets used by a spouse who is not able to live in the marital residence during the pendency of a dissolution of marriage proceeding should not necessarily be treated differently than the marital assets spent by a spouse who lives in the marital home during the dissolution proceeding. As the husband in *Hensley* had " 'to live elsewhere than the marital home,' " Claudia had to vacate the marital home by court order. (*Hensley*, 210 Ill. App. 3d 1046.) Under these particular circumstances, to penalize Claudia for spending her termination benefits on usual and necessary living expenses, such as food, rent and transportation, would seem unfair and unjust.

The dichotomous treatment of spouses based on the location of their residence while they are in the process of dissolving their marriage defies reason and reality. During the marriage, the spouses do not differ in the need for usual living expenses. During the dissolution process, the needs of each party remain unchanged yet the disparate application of the dissipation principle penalizes one spouse while it condones the same type of expenditures for the other spouse.

We continue to adhere to our prior denunciation of dissipation as "an unacceptable practice that will not be sanctioned." (*In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 51, 448 N.E.2d 545.) Wasteful expenditures, concealment of assets, unsupported allegations of the use of marital funds, and similar misuse of assets will not be condoned. See *In re Marriage of Osborn* (1990), 206 Ill. App. 3d 588, 564 N.E.2d 1325 (husband dissipated funds which were used to take three pleasure trips with another woman after separation from his wife); *Sobo*, 205 Ill. App. 3d 357, 562 N.E.2d 1083 (husband dissipated marital assets by incurring substantial gambling debts); *Rai*, 189 Ill.

App. 3d 559, 545 N.E.2d 446 (husband demonstrated blatant dissipation when he diverted and hid assets, altered financial documents, spent huge sums of money without his wife's knowledge, and failed to account for inordinate amounts of missing funds).

■ For all of the foregoing reasons, we find that the trial court did not abuse its discretion in finding that Claudia did not dissipate the $58,000 she used for legitimate living expenses.

However, we also find that the trial court abused its discretion in holding that Claudia had not dissipated the funds used to buy a computer, a printer, and stock in a printing business. These items, totaling $22,000, are not usual and necessary living expenses.

■ The apportionment of dissipated funds may be charged against a spouse's share of the marital property so as to compensate the other party. (*Partyka*, 158 Ill. App. 3d at 550.) An award of cash or property equal to half of the amount dissipated is not mandated. *In re Marriage of Durante* (1990), 201 Ill. App. 3d 376, 386, 559 N.E.2d 56; *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 464, 426 N.E.2d 1087.

Since the record contains sufficient facts to enable us to order a reapportionment of the dissipated funds, remandment for a new hearing is not necessary. (*In re Marriage of Madoch* (1991), 212 Ill. App. 3d 1007, 571 N.E.2d 1029.) The trial court ordered Gordon to pay to Claudia the sum of $62,993 for her entire interest in all marital property, which was valued at $258,178. Accordingly, the marital estate was divided approximately 24% to Claudia and 76% to Gordon. Applying the same distribution to the amount of funds dissipated ($22,000), we direct that the $62,993 judgment against Gordon be reduced by $16,720 and entered in the amount of $46,273.

Next Gordon asserts that the trial court abused its discretion in its valuation of the property because it: (1) failed to consider assets in existence and in possession of Claudia; (2) failed to use the same date for valuation of all assets; and (3) undervalued some assets and overvalued other assets. Specifically, Gordon points to five categories of property which he argues were valued improperly.

Gordon first reasserts that Claudia dissipated the $80,000 she received in termination benefits. Second, he argues that the $20,000 Claudia used to purchase stock in a printing business should have been included in the value of Claudia's estate. We have already decided these two issues and need not repeat our discussion here.

Third, Gordon contests the trial court's assigning a value of $185,000 to his liquid assets. In its order, the trial court noted the several, substantially conflicting figures which were presented on this

issue and which ranged from $135,000 to $406,000. We find no error in the trial court's approach to valuation.

▪ The Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 503) only requires that there be competent evidence of the value of the property (*In re Marriage of Hyland* (1981), 95 Ill. App. 3d 31, 37, 419 N.E.2d 662) and vests the trial court with broad discretion in the valuation of marital assets. (*In re Marriage of Malters* (1985), 133 Ill. App. 3d 168, 478 N.E.2d 1068.) In the instant case, the trial court was presented with substantial, conflicting evidence regarding the value of Gordon's liquid assets including testimony by both parties and their respective experts. From our review of the record, we cannot say that the valuation determined by the trial court was an abuse of discretion.

▪ Fourth, Gordon notes that the trial court awarded the Bloomingdale Secretarial Services business to Gordon after finding that Gordon purchased this business during the marriage and that it constituted a marital asset worth $14,000. Gordon submits that this business was sold on November 2, 1987, and the sale proceeds were added to his version of his liquid assets provided in an exhibit. Thus, Gordon maintains that by adding the value of this business to his portion of marital assets, the trial court overstated his share by $14,000.

We find Gordon's argument unpersuasive because the trial court did not base its valuation of Gordon's liquid assets solely on the exhibit tendered by Gordon. Instead, as previously discussed, the trial court considered the parties' testimony, the experts' testimony, and the documentary evidence. There is no indication in the record that the sale proceeds from Bloomingdale Secretarial Services were double counted.

▪ Fifth, Gordon maintains that the trial court erroneously valued Claudia's pension from UOP at $9,400 and assigned a 6.5% rate of interest to tax-exempt earnings which Claudia had declared. In its judgment, the trial court noted that Claudia testified to having tax-exempt earnings of $1,168 in 1987 but failed to offer an explanation regarding the amount of capital or principal which generated those earnings. Regarding this undisclosed principal, the trial court, *sua sponte,* assigned an interest rate of 6.5% per year and accordingly determined the value of the undisclosed asset to be $17,969. Gordon argues that the problem with the 6.5% rate of interest is that it did not coincide with the time Claudia purchased the asset in 1987.

We find no abuse of discretion in the trial court's adoption of a reasonable formula to determine the value of Claudia's pension and undisclosed principal. The record reveals that the pension value con-

forms to the expert testimony and evidence. Claudia admitted that she did not know the source of her tax-exempt earnings, and Gordon offered no competent testimony or evidence with which to ascertain a value. The trial court's determination of the value for Claudia's unknown principal certainly did not exceed the bounds of reason.

For the reasons stated, we affirm the trial court's valuation of property and reduce the judgment against Gordon by $16,720.

Judgment affirmed in part; modified in part and remanded with directions.

RIZZI and TULLY, JJ., concur.