In re MARRIAGE OF SANDRA A. BLUNDA, Petitioner-Appellant and Cross-Appellee, and FRANK S. BLUNDA, Respondent-Appellee and Cross-Appellant.

Second District   No. 2—97—1227

Opinion filed November 2, 1998.

William J. Scott, Jr., of Mirabella & Kincaid, P.C., of Wheaton, for appellant.

Jay A. Frank, of Frank, Miller, Melamed, Tabis & McDonnell, of Chicago, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

The petitioner, Sandra A. Blunda, appeals from the judgment of dissolution of her marriage to the respondent, Frank S. Blunda, challenging the trial court's distribution of marital assets along with its findings that the petitioner dissipated marital assets and that her execution of a personal guarantee transmuted a portion of a nonmarital business into marital property. The respondent cross-appeals.

A substantial amount of evidence and testimony was presented in the trial court. However, only those facts necessary to an understanding of this court's decision will be set forth, and many of the relevant facts will be discussed in the analysis of the issues to which they are pertinent.

The record shows that the parties were married on August 26, 1966, and the marriage was dissolved on December 13, 1996. Two children were born during the course of the marriage, and they were both emancipated and over the age of 18 at the time of trial. Both parties were 54 years of age and in good health at the time of dissolution. Frank was employed by AT&T and earned approximately $63,000 per year. Sandra was employed by Universal Heating Supplies, Inc. (Universal Heating), and earned approximately $75,000 per year.

In March 1992, Sandra received 4,200 shares of Universal Heating stock from her father, Dean Ciampi, who had been the sole shareholder in the company. At the same time, Dean Ciampi gifted 4,200 shares each to Sandra's brothers, William Ciampi and Richard Ciampi. Dean Ciampi retained 1,400 shares. In April 1992, the family decided that Universal Heating should purchase William Ciampi's 4,200 shares. To accomplish this, Universal Heating borrowed $140,000 from West Suburban Bank. The commercial promissory note executed in connection

with the transaction identified the borrower as Universal Heating. The document was signed by Dean Ciampi, president, and Sandra. Sandra also signed in her capacity as treasurer a check drawn on the account of Universal Heating for $148,547 made payable to William Ciampi. In exchange for this check, William surrendered his 4,200 shares of stock to the corporation. The stock was then retired. On the same date that the commercial promissory note was signed, Sandra executed a "Commercial Continuing Guarantee" as part of the loan transaction. Prior to his death in July 1992, Dean Ciampi retired his 1,400 shares of stock to the corporation. The $140,000 loan taken out by Universal Heating with the West Suburban Bank was repaid by the company.

The trial court classified and distributed the parties' property as follows:

| Classified Marital | Value | Awarded To |
|---|---|---|
| Marital residence 321 Cedar, Wood Dale, IL | $325,000 | Sandra |
| Personal property | $ 15,000 | Sandra |
| Forgiveness of obligation to reimburse marital estate for dissipation Respondent's exhibit 29 | $ 2,000 | Sandra |
| Forgiveness of obligation to reimburse marital estate for dissipation Respondent's exhibit 30 | $ 5,000 | Sandra |
| Forgiveness of obligation to reimburse marital estate for dissipation Respondent's exhibit 31 | $ 2,000 | Sandra |
| Forgiveness of obligation to reimburse marital estate for dissipation Respondent's exhibit 32 | $ 3,000 | Sandra |
| Forgiveness of obligation to reimburse marital estate for dissipation (fake loan) | $ 7,000 | Sandra |
| Forgiveness of obligation to reimburse marital estate for dissipation (payment of Dean Ciampi estate taxes) | $ 13,000 | Sandra |
| Joint Prudential account with daughter | $ 5,982 | Sandra |
| Joint Prudential account with other daughter | $ 5,982 | Sandra |

| | | |
|---|---|---|
| $11,123 withdrawn from West Suburban Bank | $ 11,123 | Sandra |
| $10,003 withdrawn from American National Bank | $ 10,003 | Sandra |
| $35,000 transferred to Rick Ciampi (Respondent's exhibits 33 through 36) | $ 35,000 | Sandra |
| West Suburban Bancorp stock | $ 45,568 | Sandra |
| Household bank accounts | $ 40,561 | Sandra |
| Prudential life insurance | $ 5,600 | Sandra |
| Prudential IRA account | $ 29,600 | Sandra |
| 1993 Oldsmoblie | $ 14,850 | Sandra |
| Property at 29 W. 512 North Ave. West Chicago, IL | $150,000 | Frank |
| Property at 32 S. Wisconsin Addison, IL | $ 49,000 | Frank |
| Indebtedness of Michael Aburoza | $ 13,000 | Frank |
| 405 shares of AT&T stock | $ 21,800 | Frank |
| 144 shares of AT&T stock | $ 7,776 | Frank |
| Marital portion of AT&T Employee pension plan | $ 72,162 | Frank |
| AT&T long-term savings (net of loan to be paid) | $ 44,438 | Frank |
| 136 shares of Ameritech stock | $ 7,776 | Frank |
| Smith-Barney IRA | $ 18,360 | Frank |
| Forgiveness of obligation to reimburse marital estate for dissipation (repairs to sister's home) | $ 3,100 | Frank |
| Forgiveness of obligation to reimburse marital estate for dissipation (bonds and certificates of deposit) | $ 33,000 | Frank |
| 1988 Chevrolet | $ 3,025 | Frank |
| 1989 Buick (less $9,500 paid to Sandra) | $ 0 | Frank |

| Classified Nonmarital | Value | Awarded to |
|---|---|---|
| One-half interest in Universal Heating | $810,000 | Sandra |
| Inheritance from father | $302,353 | Sandra |
| Account with Dean Ciampi | $ 41,695.85 | Sandra |
| Nonmarital portion of AT&T employee pension fund | $ 16,800 | Frank. |

In addition to the above-mentioned distribution of property, the trial court ordered the following:

"K. Sandra shall reimburse Frank the sum of $87,450.66, equaling one-half of the amount of $174,901.32. This last amount represents the extension of marital credit via Sandra's personal guarantee to obtain loans on behalf of Universal Heating Supplies, Inc. This reimbursement is covered by and provided for in paragraph L. below.

L. *** In order to effectuate the final division of property herein, Sandra shall pay to Frank the sum of $100,000.00 within 45 days of the entry of this judgment."

On appeal, Sandra first argues that the trial court erred in ordering her to reimburse Frank $87,450.66 and in essence finding that a portion of her nonmarital business became marital property. She argues that the court erred in awarding one-half of that portion to Frank. She maintains that the mere incurring of personal liability on the guarantee was not sufficient to transmute the property into marital property. In response, Frank argues that the trial court properly found a portion of the stock to be marital property. He maintains that the practical effect of the purchase of William's shares was to increase Sandra's ownership in the company by over 12%. He claims that Sandra placed marital assets at risk to accomplish the purchase; therefore, he continues, the trial court correctly reasoned that Sandra's increased interest in the company should be valued at the loan amount and classified as marital.

■ All the property of the parties to a marriage belongs to one of three estates, the estate of the husband, the estate of the wife, or the marital estate. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 641-42 (1993). In order to distribute property upon dissolution of marriage, a trial court must first classify that property as either marital or nonmarital. *In re Marriage of Hegge*, 285 Ill. App. 3d 138, 140 (1996). A trial court's classification of property will not be disturbed unless it is contrary to the manifest weight of the evidence. *In re Marriage of Perlmutter*, 225 Ill. App. 3d 362, 365 (1992).

Section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/503 (West 1996)) governs the determination of whether property is to be classified as marital or nonmarital. Section 503(a) of the Act provides in part:

" '[M]arital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':

(1) property acquired by gift, legacy or descent;

(2) property acquired in exchange for property acquired

before the marriage or in exchange for property acquired by gift, legacy or descent;

(3) property acquired by a spouse after a judgment of legal separation;

(4) property excluded by valid agreement of the parties;

(5) any judgment or property obtained by judgment awarded to the spouse from the other spouse;

(6) property acquired before the marriage;

(7) the increase in value of property acquired by a method listed in paragraphs (1) through (6) of this subsection, irrespective of whether the increase results from a contribution of marital property, non-marital property, the personal effort of a spouse, or otherwise, subject to the right of reimbursement provided in subsection (c) of this Section; and

(8) income from property acquired by a method listed in paragraphs (1) through (7) of this subsection if the income is not attributable to the personal effort of a spouse." 750 ILCS 5/503(a) (West 1996) (eff. June 1, 1997).

Property acquired during the marriage is presumed to be marital property unless it is shown by clear and convincing evidence that the property falls within one of the statutory exceptions listed in subsection (a). 750 ILCS 5/503(b) (West 1996); *Hegge*, 285 Ill. App. 3d at 141.

Section 503(c)(2) of the Act provides:

"When one estate of property makes a contribution to another estate of property, or when a spouse contributes personal effort to non-marital property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which is not retraceable by clear and convincing evidence, or was a gift, or, in the case of a contribution of personal effort of a spouse to non-marital property, unless the effort is significant and results in substantial appreciation of the non-marital property. Personal effort of a spouse shall be deemed a contribution by the marital estate. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution." 750 ILCS 5/503(c)(2) (West 1996).

In the instant case, Dean Ciampi executed a corporate resolution gifting 4,200 shares of Universal Heating stock to Sandra. The trial court found this to be her nonmarital property. We agree with that conclusion and further find that, in accordance with section 503(a)(7), the increase in value of this property due to Universal Heating's acquisition of William Ciampi's shares of stock was also

nonmarital property. See 750 ILCS 5/503(a)(7) (West 1996). This is true irrespective of whether the increase results from a contribution from the marital estate. 750 ILCS 5/503(a)(7) (West 1996). However, the increase to the nonmarital property is subject to the right of reimbursement to the contributing estate as set forth in section 503(c) of the Act. 750 ILCS 5/503(a)(7) (West 1996). In order for the marital estate to be reimbursed for any contribution made to Sandra's nonmarital estate, Frank had the burden to retrace it by clear and convincing evidence. 750 ILCS 5/503(c)(2) (West 1996); *Perlmutter*, 225 Ill. App. 3d at 379.

The trial court found that Frank was entitled to reimbursement for an amount equaling one-half of the credit extended to effectuate the purchase of William Ciampi's shares by Universal Heating. However, this finding was erroneous since there was nothing to reimburse. The five-year loan to finance the transaction was taken out in May 1992 and was almost completely repaid at the time of the December 1996 judgment of dissolution. Thus, no personal assets of the estate were expended. There was nothing to reimburse, and there was no proof of a contribution from the marital estate.

*In re Marriage of Werries*, 247 Ill. App. 3d 639 (1993), is persuasive on this point. There, the parties used jointly owned property as collateral to borrow money to make enhancements to the husband's nonmarital farming operation. The bank required the parties to take the loan personally and use the land as collateral. The wife argued that the husband's farming partnership should be considered marital property or she should be reimbursed for her contribution coming in the form of the use of her jointly owned property as collateral for the loan. The appellate court rejected this argument, stating:

> "[T]he portion of the loan used for this building was completely repaid by the partnership. No personal assets of the parties were expended ***. In short, there was nothing to reimburse as no contribution was proved." *Werries*, 247 Ill. App. 3d at 648.

*In re Marriage of Kennedy*, 94 Ill. App. 3d 537 (1981), relied upon by Frank, is clearly distinguishable. There, the husband owned four music stores prior to the parties' marriage. After they were married, the husband bought some new stores largely on the credit of the business. However, the court noted that the collateral for the loans included the new stores and the lender insisted on personal guarantees not only from the husband but also the wife. The court concluded that the new stores were marital property because they were bought with money raised substantially on marital credit. In contrast, in the case before us, Frank did not sign a personal guarantee, and the collateral

for the loan did not include any marital property. At any rate, we find the analysis set forth in *Werries* to be more applicable to the present case and supportive of our finding that the trial court erred in ordering Sandra to reimburse Frank in connection with the loan.

Sandra next argues that the trial court erred in finding that she dissipated marital assets in several instances. She contends that the alleged dissipations occurred prior to the point where the marriage was irretrievably broken and, in any event, she adequately accounted for the funds.

Frank initially contends that Sandra is precluded from appealing the issue because it was not addressed in the order from which she appealed.

■ A notice of appeal confers jurisdiction on an appellate court to consider only the judgments or parts thereof specified in the notice of appeal. *Mimica v. Area Interstate Trucking, Inc.*, 250 Ill. App. 3d 423, 425 (1993). A notice of appeal is to be liberally construed and it need not designate a particular order to confer jurisdiction, as long as the order that is specified directly relates back to the judgment or order from which review is sought. *In re Marriage of Goldberg*, 282 Ill. App. 3d 997, 1001 (1996).

Here, Sandra's notice of appeal states that she is appealing from the trial court's order denying her motion to reconsider. In her brief in support of her motion to reconsider, Sandra specifically asked the court to reconsider its ruling that dissipations had occurred with respect to her transactions with her brother, Richard. The instances of dissipation she now challenges on appeal involved her brother Richard. Accordingly, we find that this court has jurisdiction to address this issue.

■ With respect to the merits of the issue raised by Sandra, we note that the term "dissipation" refers to the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown. *In re Marriage of O'Neill*, 138 Ill. 2d 487, 497 (1990). Whether a given course of conduct constitutes dissipation depends on the facts of each particular case. *In re Marriage of Seversen*, 228 Ill. App. 3d 820, 824 (1992). The explanation given by the spouse charged with dissipation as to how funds were spent requires the trial court to determine his or her credibility. *In re Marriage of Rai*, 189 Ill. App. 3d 559, 565 (1989). The spouse charged with the dissipation of marital funds has the burden of showing, by clear and convincing evidence, how the funds were spent. *Rai*, 189 Ill. App. 3d at 565. If expenditures are not documented adequately by the person charged with dissipa-

tion, courts will affirm a finding of dissipation. *Rai*, 189 Ill. App. 3d at 565. Whether there was dissipation is a matter for the trial court's sound discretion, and a finding concerning dissipation will not be disturbed unless it is against the manifest weight of the evidence. *Rai*, 189 Ill. App. 3d at 565. An abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court. *Seversen*, 228 Ill. App. 3d at 824-25.

In the present case, Frank testified that the parties began to experience difficulties in their marriage late in 1991. He noted that they had no companionship or communication. Their difficulties progressed from late in 1991 until their peak in mid-1992. According to Frank, "it just got bad and finally unbearable."

■ The trial court did not set a date at which the marriage suffered an irreconcilable breakdown. However, we find that there is ample evidence in the record to suggest that this occurred by mid-1992. At any rate, the earliest possible time that could be reasonably drawn from the testimony at which a breakdown could be fixed would be late in 1991. One of the dissipations found by the trial court occurred well before that date. Therefore, we find that the trial court erred in finding that Sandra dissipated marital funds in connection with respondent's exhibit No. 29, check No. 5137 for $2,000 drawn on the parties' joint account on May 6, 1991, and signed by Sandra. The remainder of the dissipations found by the trial court occurred in 1993. Thus, there is no merit to Sandra's argument that those dissipations occurred prior to the irreconcilable breakdown of the marriage.

With respect to the instances of dissipation found by the trial court, it is clear that the court resolved the credibility question against Sandra, choosing to disbelieve her testimony. We note that the trial court's findings were supported by the lack of adequate documentary evidence to substantiate Sandra's claims that the marital estate was reimbursed for the expenditures in question.

In connection with respondent's exhibit No. 30, a check written to the Prudential Utility Fund on behalf of her brother for $5,000, dated July 13, 1993, Sandra produced a check from her brother (petitioner's exhibit No. 31) made out to Sandra for $5,000 dated July 16, 1993. However, the copy of the check did not appear to be made by the bank, and there was nothing to indicate that the copy of the front of the check matched the copy of the back of a check in petitioner's exhibit No. 31. Moreover, Sandra did not produce a deposit slip showing that a check for $5,000 was included in the deposit amount of $5,830.50 made on July 19, 1993.

Respondent's exhibits Nos. 31 and 32 were checks written by San-

dra from the marital account to Prudential Securities on behalf of her brother for $2,000 and $3,000, respectively. Sandra claimed she repaid those amounts as reflected by bank statements of the marital account showing deposits of $2,220.50 and $4,331.50. However, she did not produce a deposit slip to indicate that she deposited a check from her brother to cover the checks she had written to him earlier.

Sandra withdrew $11,123 and $10,300 from the marital account on separate occasions in 1993. She claimed that a deposit to that account on June 24, 1995, of $21,917.77 represented repayment of the amounts previously withdrawn by her. However, the amount of the deposit, which was made almost two years later, did not match the amount of the funds taken. Furthermore, she did not produce a deposit slip itemizing the amount of checks or cash deposited. She claimed that the discrepancy between the amount deposited and the amount withdrawn was due to the deposit of her payroll check. However, she could not even estimate how much any payroll check at that time might have been.

Under these circumstances, we are unable to say that no reasonable person would take the view adopted by the trial court finding that Sandra failed to show by clear and convincing evidence that she did not dissipate the above-discussed marital assets. However, we reverse the trial court's finding of dissipation with respect to Sandra's withdrawal of $2,000 from the marital account on May 6, 1991, prior to the time when the parties' marriage underwent an irreconcilable breakdown.

Having addressed Sandra's contentions on appeal, we turn now to Frank's cross-appeal. He first argues that Sandra's interest in Universal Heating, or at least some portion of it, should have been classified as marital property. He contends that the transfer of stock from Sandra's father to Sandra was not a gift but instead was compensation in connection with her employment with the company.

■ Property acquired during marriage by means of a gift is to be classified as nonmarital property. See 750 ILCS 5/503(a)(1) (West 1996); *Werries*, 247 Ill. App. 3d at 642. In a dissolution of marriage proceeding, there must be proof of donative intent for a gift to be valid. *In re Marriage of Simmons*, 221 Ill. App. 3d 89, 92 (1991). Donative intent is presumed where the transfer of property is from a parent to a child. *Simmons*, 221 Ill. App. 3d at 92. Thus, it is the burden of the party challenging the gift to present evidence that the parent making the transfer lacked donative intent. A trial court's discretion on such determinations will not be disturbed unless it is contrary to

the manifest weight of the evidence. See *Simmons*, 221 Ill. App. 3d at 92.

■ Here, Sandra testified that the 4,200 shares of stock in question were a gift from her father in March 1992. In April 1993, her father filed a gift tax return for the 1992 tax year. Frank did not present any evidence to rebut the presumption of a gift, and his argument on appeal is without merit. His reliance on a federal treasury regulation (see Treas. Reg. § 1.61—2(d)(4) (1997)) and an out-of-state case is misplaced. The treasury regulation merely states that, if a corporation transfers stock to an employee as compensation, the fair market value of the stock shall be included in the gross income of the employee for tax purposes. Treas. Reg. § 1.61—2(d)(4) (1997). The only testimony in the record stated that the stock was a gift. There was nothing to suggest that the stock was meant to be compensation. Furthermore, it appears that Sandra was otherwise adequately compensated by way of salary for her efforts in working for her father's company. The regulation has no bearing on the question before us. Moreover, the mere fact that stock was not given to other siblings of Sandra who were not employees does not rebut the presumption that the stock was a gift. Accordingly, we conclude that the trial court did not abuse its discretion in awarding Sandra the entire 4,200 shares of Universal Heating stock as her nonmarital property.

Next, Frank argues that the trial court erred in finding that he dissipated $33,000 in marital assets.

■ Again, whether a given course of conduct constitutes dissipation depends on the facts of each case. *Seversen*, 228 Ill. App. 3d at 824. The explanation of how funds were spent requires the trial court to determine the credibility of the witness. *Rai*, 189 Ill. App. 3d at 565. Whether there was a dissipation and the amount of it are matters for the trial court's sound discretion, and its findings in this regard will not be disturbed unless they are against the manifest weight of the evidence. *Rai*, 189 Ill. App. 3d at 565.

After reviewing Frank's testimony and the exhibits he relied upon to explain the dissipations, we find that the trial court's finding that Frank dissipated $33,000 in marital assets was not against the manifest weight of the evidence. Frank testified that he took about $55,000 from various marital resources, including a savings plan, a credit union account, bonds, and two certificates of deposit. He attempted to account for these funds with two exhibits he introduced into evidence purporting to explain how the funds were spent. The trial court gave the defendant credit for college expenses and "other legitimate marital expenses" paid by Frank and found that $33,000

remained unexplained. The trial court had an opportunity to evaluate Frank's credibility and examine his exhibits. We are unable to say that no reasonable person would take the view adopted by the trial court. Accordingly, we affirm the trial court's decision on this matter.

Frank next argues that the trial court erred in failing to find that Sandra dissipated certain other marital funds. Specifically, he contends that Sandra failed to account for $20,200, the amount of money she should have been able to save after expenses during the year of 1994. Frank also contends that she failed to account for $13,800 and $20,000 that she withdrew from the marital account and gave to her brother. He also argues that she failed to offer any explanation for $2,000 that she withdrew from the marital account by way of a check she wrote to herself.

Initially, we note that Sandra failed to account for the $2,000 check she wrote to herself from the marital account. She did not offer any explanation for this amount. Accordingly, we find that the trial court erred in failing to find that Sandra dissipated this amount.

We further find, however, that Frank's remaining contentions of dissipation are without merit. Sandra adequately explained that the $13,800 and $20,000 she withdrew from the marital account and paid to her brother were amounts legitimately owed to her brother. She testified that the amounts represented dividends she had earned on West Suburban Bank stock that she held in her name for the benefit of her brother. She noted that originally the stock was in her brother's name and they had an agreement that the stock was to be held for her brother's child. With respect to the $20,200 Frank alleges that Sandra failed to save, we note that one spouse's use of marital funds for expenses could be shown to be so selfish and excessive as to constitute a dissipation of marital funds (*In re Marriage of Hagshenas*, 234 Ill. App. 3d 178, 197 (1992)). However, after reviewing the record before us, we do not find this to be the case. Therefore, we find no abuse of discretion in the trial court's refusal to find a dissipation.

Lastly, Frank argues that the trial court erred in its distribution of the marital property. He contends that the trial court should have awarded him 60% of the marital estate because Sandra's nonmarital estate was much larger.

In dividing property, each spouse is to receive his or her own nonmarital property. 750 ILCS 5/503(d) (West 1996). The trial court is to consider the 12 factors listed in section 503(d) of the Act when dividing marital property. 750 ILCS 5/503(d) (West 1996). The trial court's distribution of marital property need not be equal as long as it is equi-

table (*Werries*, 247 Ill. App. 3d at 649), and specific findings are not required.

Our reversal as to Sandra's obligation to reimburse Frank for the loan obtained by Universal Heating necessarily affects the total amount of property to be distributed. Accordingly, reexamination of the division of the marital estate is required on remand.

For the foregoing reasons, we affirm in part and reverse in part the judgment of the circuit court of Du Page County and remand the cause for further proceedings consistent with the views expressed in this opinion.

Affirmed in part and reversed in part; cause remanded.

INGLIS and RATHJE, JJ., concur.